IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Downs Racing, L.P.,                  :
              Petitioner         :
                                  :
        v.                        :
                                  :
Commonwealth of Pennsylvania,   :    No. 802 F.R. 2016
              Respondent      :    Argued: May 12, 2021


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge[1]
                HONORABLE MARY HANNAH LEAVITT, Judge[2]
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge[3]
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE STACY WALLACE, Judge[4]


OPINION
BY JUDGE FIZZANO CANNON         FILED: December 19, 2022

          At issue in this case is whether and to what extent Momentum Dollars, also known as Players' Club Points (PC Points), may be excluded from a casino's gross income under the Pennsylvania Race Horse Development and Gaming Act

---

[1] This case was assigned to the panel before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

[2] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

[3] This matter was reassigned to the author on September 13, 2022.

[4] This case was argued before a panel of the Court that included President Judge Emeritus Brobson. President Judge Emeritus Brobson's service with this Court ended on January 2, 2022, before the Court reached a decision in this matter. Accordingly, Judge Stacy Wallace was substituted for President Judge Emeritus Brobson as a panel member in this matter and considered the matter as submitted on briefs.

(Gaming Act).[5]  Because we agree with the Board of Finance and Revenue (Board) that only the casino's actual costs are excludable, we affirm the Board's decision in part, vacate in part, and remand for recalculation of the excludable amounts in accordance with this opinion.

## I. Background

Petitioner, Downs Racing, L.P. (Downs Racing), operates Mohegan Sun, a casino and resort in Wilkes-Barre, Luzerne County.  Board Decision, September 9, 2016 (Bd. Dec.) at 1.  Downs Racing seeks a refund of state taxes paid for the period from June 1, 2012, through December 31, 2013 (Tax Period).  *Id.* Downs Racing contends that it was entitled to deductions from its gross revenue for PC Points it distributed to players as credits entered on member cards at slot machines and game tables.  *Id.* at 1-2.  PC Points are not redeemable for cash, but they can be used in lieu of cash with various vendors at the resort.  *Id.* at 2 & 6. Downs Racing reimburses the vendors at a discounted rate.  *Id.* at 3.  PC Points can also be redeemed directly with Downs Racing for certain items such as gas cards, gift cards, and iPads.  *See id.* at 7.

Rather than attempting to calculate its cost for each individual item, Downs Racing made an overall calculation based on the total value of PC Points distributed during the Tax Period.  Stipulations of Fact, December 20, 2019 (Stips.) at 8-9, ¶ 32; *see also id.* at 10-12, ¶ 33.  Downs Racing applied what it asserted to be a "historical redemption rate" that assumed 93.569% of distributed PC Points would be redeemed by players.  *Id.* at 8-9, ¶ 32.  It then further reduced that figure by applying a "cost factor" of 67.3% based on the discounts it received in reimbursing vendors for PC Points redeemed in their shops.  *Id.*  However, during its appeal to

---

[5] 4 Pa.C.S. §§ 1101-1194.

the Board, Downs Racing submitted spread sheets that documented the actual cost to Downs Racing for each item purchased with PC Points. Bd. Dec. at 3

Notably, Downs Racing also did not track whether PC Points were awarded for slot machine play or table game play, but simply calculated the percentage amounts of revenue attributable to each category of play. Stips. at 12, ¶ 35. Thus, Downs Racing was not in a position to determine whether specific PC Points being redeemed were awarded for table game play or slot machine play.

Downs Racing filed a petition with the Department of Revenue's Board of Appeals (BOA) seeking a total refund of $6,640,891.29 plus interest for the Tax Period. Bd. Dec. at 1. Downs Racing asserted that PC Points are "cash equivalents" and therefore deductible under Section 1103 of the Gaming Act, which defines them as follows:

> "Cash equivalent." An asset that is readily convertible to cash, including, but not limited to, any of the following:
>
> (1) Chips or tokens.
>
> (2) Travelers checks.
>
> (3) Foreign currency and coin.
>
> (4) Certified checks, cashier's checks and money orders.
>
> (5) Personal checks or drafts.
>
> (6) A negotiable instrument applied against credit extended by a certificate holder, an interactive gaming certificate holder, an interactive gaming operator or a financial institution.
>
> (6.1) A prepaid access instrument.[6]

---

[6] "Prepaid access instrument." A card, code, electronic serial number, mobile identification number, personal identification number or similar device that:

(7) Any other instrument or representation of value that the Pennsylvania Gaming Control Board deems a cash equivalent.

4 Pa. C.S. § 1103.

During its review of the refund petition, the BOA requested that Downs Racing provide additional documentation concerning the redemption of PC Points and purchases made with the PC Points. BOA Decision, January 4, 2016 (BOA Dec.) at 3. The BOA subsequently denied the refund petition in its entirety, finding that Downs Racing did not provide enough information to allow a determination of whether PC Points were deductible from either gross table gaming revenue (GTGR) or gross terminal revenue (GTR). *Id.*

Downs Racing appealed the BOA's determination to the Board. The Board reasoned that Downs Racing was entitled to deductions for the PC Points, but only for its actual costs, *i.e.*, the amounts it actually paid to vendors as reimbursement for players' redemptions of the PC Points. Bd. Dec. at 6-7. Further, no deductions could be taken for reimbursement of PC Points spent on "travel

(1) Allows patron access to funds that have been paid in advance and can be retrieved or transferred through the use of the device.

(2) Qualifies as an access device for purposes of Regulation E issued by the Board of Governors of the Federal Reserve System under 12 CFR Pt. 205 (relating to electronic fund transfers (Regulation E));

(3) Must be distributed by a slot machine licensee or its affiliates in order to be considered a cash equivalent at the slot machine licensee's licensed facility or the location of the slot machine licensee's affiliates.

(4) Must be used in conjunction with an approved cashless wagering system or electronic credit system in order to transfer funds for gaming purposes.

4 Pa. C.S. § 1103.

4

expenses, food, refreshments, lodging or services," all of which are non-deductible under Section 1103. *Id.* at 7. The documentation submitted by Downs Racing did not break down the reimbursements by category for each item. *See id.* at 2 & 6. The Board found the evidence showed that most of the PC Points were redeemed for excluded categories of items. *Id.* at 6. Thus, the Board's finding essentially reflected that Downs Racing failed to sustain its burden of proof regarding specific items purchased with PC Points from most of the vendors, which sell both deductible and non-deductible items.

Nonetheless, the Board allowed Downs Racing to deduct its costs for items it provided to players by directly redeeming their PC Points, as well as its costs for reimbursements to specific listed vendors from whom it would have been impossible to purchase non-deductible items. The Board awarded a total of $185, 856.93 (GTR of $177,840.91 and GTGR of $8,016.02), plus interest.[7]

Downs Racing then sought review in this Court.

## II. Issues

Downs Racing raises two arguments on review to this Court:[8]

---

[7] The Board also issued a second decision on virtually identical refund claims for the tax period from January 1, 2014 through June 30, 2015. Downs Racing asserted the same arguments, and the Board applied the same analysis. Downs Racing sought a total refund of $7,790, 915.16, of which the Board awarded $1,314,587.30 plus interest. That decision is not at issue here.

[8] This Court reviews decisions of the Board based on stipulated facts or a record created before this Court. Pa. R.A.P. 1571(h). In the instant case, the record consists of stipulated facts and stipulated documents, which we adopt as our own findings of fact. The stipulation is binding on the parties and the Court, but the Court may draw its own legal conclusions. *Kelleher v. Commonwealth*, 704 A.2d 729, 731 (Pa. Cmwlth. 1997). In reviewing the Board's decisions, this Court exercises the "broadest scope of review." *Southern Pines Trucking v. Commonwealth*, 42 A.3d 1222, 1227 n.5 (Pa. Cmwlth. 2012). Our standard of review is *de novo* because "we function as a trial court even though such cases are heard in our appellate jurisdiction." *Id.* Further, a

A. Whether the personal property[9] that is actually distributed to patrons as a result of gaming play should be excluded from the calculation of GTR and GTGR under [Section] 1103 of the Gaming Act.

B. Alternatively, even if [the Board] properly applied the Gaming Act's definitions of GTR and GTGR, does [the Board's] Order fail to provide relief for all eligible, non-excepted redemption locations and redeemed items[?]

Pet'r Br. at 4.

## III. Discussion

The overarching issue in this case is when and how PC Points are to be valued for purposes of their subtraction from gross revenue. This determination requires examination of the Gaming Act's definitions of GTGR and GTR.

The Gaming Act defines GTGR as "[t]he total of":

---

question will be heard if it was raised "at any stage of the proceedings below and thereafter preserved." Pa. R.A.P. 1571(h).

[9] The Board concluded:

> Notwithstanding this Board's conclusion that the Momentum Dollars and Choice Credits do not constitute cash equivalents, the Board finds they qualify as personal property distributed to patrons as a result of playing a slot machine or table game. Petitioner has provided evidence of value by showing the Momentum Dollars and Choice Credits redeemed each month by its patrons. These spreadsheets also include the location, store, or restaurant at which the property was redeemed.

Bd. Dec. at 6, Conclusion ¶ 2. In this Court, the Commonwealth raises the question of whether PC Points are personal property "when awarded." Com. Br. at 8. We do not reach that specific issue, because we conclude that PC Points can be valued only at the time they are redeemed. As the Commonwealth stated in its brief, "regardless of whether [the] Points are property at the time of award or at the time of redemption, the limit on the subtraction for distributions of personal property under the [gross terminal revenue] [t]ax and [gross table game revenue] [t]ax is clearly 'actual cost paid[.]'" Commonwealth Brief at 22.

6

(1) Cash or cash equivalents received in the playing of a table game minus the total of:

> (i) Cash or cash equivalents paid to players as a result of playing a table game.

> (ii) Cash or cash equivalents paid to purchase annuities to fund prizes payable to players over a period of time as a result of playing a table game.

> (iii) *The actual cost paid by the certificate holder for any personal property distributed* to a player as a result of playing a table game. This does not include travel expenses, food, refreshments, lodging or services.

> . . . .

4 Pa.C.S. § 1103 (emphasis added).

By contrast, regarding slot machines, the Gaming Act defines GTR slightly differently as "the total of":

> (1) cash or cash equivalent wagers received by a slot machine minus the total of:

> > (i) Cash or cash equivalents paid out to players as a result of playing a slot machine, whether paid manually or paid out by the slot machine.

> > (ii) Cash or cash equivalents paid to purchase annuities to fund prizes payable to players over a period of time as a result of playing a slot machine.

> > (iii) *Any personal property distributed* to a player as a result of playing a slot machine. This does not include travel expenses, food, refreshments, lodging or services.

> > . . . .

7

*Id.*[10] (emphasis added).

Notably, both definitions provide separately for the deduction of cash or cash equivalents and other kinds of personal property. This distinction makes sense because, unlike PC Points, cash and cash equivalents (such as checks, for example) have both a known and present cost and a known and present value at the time of their distribution.

By using different language regarding GTGR and GTR in paragraph (iii) of each definition, the legislature apparently contemplated some further distinction for certain kinds of personal property. *See Fonner v. Shandon, Inc.*, 724 A.2d 903, 907 (Pa. 1999) ("[W]here the legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where excluded."). Under principles of statutory construction, "[p]rovisos shall be construed to limit rather than to extend the operation of the clauses to which they refer." 1 Pa.C.S. § 1924. "The purpose of a proviso is to 'qualify, restrain or otherwise modify the general language of the enabling provision.'" *Commonwealth v. Bigelow*, 399 A.2d 392, 395 (Pa. 1979) (quoting *Commonwealth ex rel. Margiotti v. Lawrence*, 193 A. 46, 48 (Pa. 1937)).[11] A proviso need not be expressly labeled as such. *See Donnelly v. York Cnty. Bd. of Assessment Appeals*, 976 A.2d 1226,

---

[10] In addition to defining how GTGR and GTR are calculated, the Gaming Act also defines the calculation of "gross interactive airport gaming revenue" and "gross interactive gaming revenue." 4 Pa.C.S. § 1103. For both of these types of gaming, as for GTGR, gross revenue is reduced by "the actual cost paid" by the gaming certificate holders for personal property distributed to players as a result of play. *Id.* Only the definition of GTR lacks an express reference to the "actual cost paid by the certificate holder." *Id.*

[11] Similarly, under the principle of *inclusio unius est exclusio alterius*, "the expression or inclusion of one thing in a statute implies the exclusion of an alternative." *Cornerstone Land Dev. Co. of Pittsburgh LLC v. Wadwell Grp.*, 959 A.2d 1264, 1270 (Pa. Super. 2008) (first citing *Commonwealth v. Ostrosky*, 909 A.2d 1224, 1229 n.7 (Pa. 2006); and then citing Black's Law Dictionary 265 (2d Pocket ed. 2001)).

1229 n.5 (Pa. Cmwlth. 2009). Here, therefore, the limitation of deductions from GTGR to the "actual cost paid" by the taxpayer, 4 Pa.C.S. § 1103, operates as a proviso in the definition of GTGR that is not present in the definition of GTR. Thus, the deduction from GTR must be construed as not necessarily limited to the actual cost paid.

However, although the legislature made clear that the *only* way to value points as a reduction of GTGR is to use the "actual cost paid" for the personal property distributed to the player, it does not follow that the absence of that limiting language from the statute's GTR provision means that personal property *cannot* be valued as the actual cost paid, but merely that other means of valuation may also be appropriate, depending on the type of personal property at issue. For example, we observe that in *Greenwood Gaming & Entertainment, Inc. v. Commonwealth*, 263 A.3d 611, 620 n.5 (Pa. 2021) (*Greenwood II*), our Supreme Court deemed the distinction in the statutory definitions "inconsequential" as those definitions related to distributions of event tickets to patrons.

Under the facts in this case, the face value of PC Points appears on a patron's player card as the PC Points are earned by the patron's gaming play, whether at tables or slot machines. However, the patron holding the PC Points decides whether, when, and how to redeem them. That decision necessarily determines the amount, if any, that Downs Racing may subtract from gross revenues. Until redemption occurs, the PC Points constitute merely an inchoate right, both the value and cost of which are indeterminate.

In this regard, PC Points are analogous to airline miles awarded by a credit card issuer in connection with cardholders' purchases using the card. A federal court of appeals considering deduction of the costs of airline miles held that

9

the credit card issuer could not deduct the estimated cost of the miles from income, for federal income tax purposes, before the cardholders actually redeemed the miles and the issuer actually had to purchase airline tickets for the cardholders. *Capital One Fin. Corp. v. Comm'r*, 659 F.3d 316, 327-28 (4th Cir. 2011). The court reasoned:

> By limiting deductions until "the obligation to pay, has become final and definite in amount," *Sec. Flour Mills Co. v. Comm['*]r*, 321 U.S. 281, 287 . . . (1944), . . . [a]ccuracy is enhanced because a "taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent." *Baltimore & Ohio R.R. Co. v. Magruder*, 174 F.2d 896, 898 (4th Cir. 1949) (quoting *Sec. Flour Mills Co.*, 321 U.S. at 284 . . . ). Distortions in taxable income are also minimized because costs and revenue are treated alike. *See Lucas v. Am. Code Co.*, 280 U.S. 445, 449 . . . (1930) ("Generally speaking, the income[ ]tax law is concerned only with realized losses, as with realized gains.").
>
> . . . .
>
> Capital One would be permitted to deduct airline ticket redemption costs only when credit card holders redeemed their accumulated miles and Capital One was thereby obligated to purchase airline tickets on their behalf . . . . When a single mile is awarded for each dollar charged on the card, it remains unknown when the cardholder will earn the 18,000 miles necessary to qualify for an airline ticket. It also remains uncertain when, if ever, the cardholders will redeem their outstanding accumulated miles. Therefore, the amount and timing of Capital One's liabilities with respect to airline tickets for MilesOne cardholders are not fixed until customers redeem their miles.

*Id.*

10

The federal court's reasoning is persuasive here. Like airline miles rewarded for credit card use, some PC Points are never redeemed; in those instances, Downs Racing has incurred no costs. Therefore, any subtraction allowed from gross revenues in such instances would constitute a windfall. Moreover, if a patron uses his PC Points to purchase goods at a participating store, Downs Racing reimburses the vendor at a predetermined rate that is less than the dollar amount charged to the patron. Allowing Downs Racing to subtract from its gross revenue the dollar value of the PC Points to the patron would create a windfall by allowing Downs Racing to subtract more than it spent. In addition, PC Points may be used for purchases that are not eligible for deduction from gross revenue by Downs Racing, but that, obviously, cannot be determined until redemption of the PC Points.[12]

Importantly, this same reasoning applies equally to all PC Points, whether they are earned for table gaming or terminal gaming. Accordingly, we conclude that PC Points must be treated the same way as to both GTGR and GTR. PC Points can be subtracted from gross revenue only to the extent of (1) their cost to Downs Racing and (2) their redemption for purchases that are not excluded from permissible deductions from gross revenues. We agree with the Board, therefore, that the amount that may be subtracted in relation to each PC Point can be determined only at the time, if any, that the patron redeems that PC Point.

The Board did not err in concluding that Downs Racing must demonstrate the actual cost paid by it for each item for which a deduction was taken, as well as demonstrating that each item did not constitute travel expenses, food, refreshments, lodging or services. For vendors selling both eligible and ineligible

---

[12] As the Board correctly observed, "travel expenses, food, refreshments, lodging or services" are not subject to subtraction from gross revenue, so Downs Racing likewise cannot deduct from gross revenue the amounts it spends to reimburse vendors for those purchases. *See* 4 Pa.C.S. § 1103; Bd. Dec. at 6.

11

items, this means Downs Racing must provide a breakout distinguishing eligible purchases from ineligible ones. However, Downs Racing did not provide individual records of what items were purchased with PC Points. The Commonwealth agrees that even though Downs Racing did not track what specific items were distributed at redemption, a deduction should still be allowed for the costs of items purchased at locations where no prohibited items are sold. Resp't Br. at 42. The Commonwealth appropriately requests that this Court remand this case to the Board for calculation of the proper deductions and corresponding refunds. *Id.*

## IV. Conclusion

For the foregoing reasons, we vacate the Board's calculation of the tax refund due for the Tax Period to Downs Racing, affirm the Board's decision in all other respects, and remand for a calculation of the refunds due, consistent with that decision and this opinion.[13]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[13] We note that on July 23, 2020, Downs Racing filed an application to strike exhibits to the Commonwealth's brief. As we have not considered those exhibits in reaching our decision, we deny the application as moot.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Downs Racing, L.P.,
          Petitioner

      v.

Commonwealth of Pennsylvania,
          Respondent

:
:
:
:
:
:
:
:
:

No. 802 F.R. 2016

## O R D E R

AND NOW, this 19th day of December, 2022, the calculation by the Board of Finance and Revenue (Board) of the tax refund due to Downs Racing, L.P. (Downs Racing) for the tax period from June 1, 2012, through December 31, 2013 (Tax Period) is VACATED. The Board's decision is AFFIRMED in all other respects. This matter is REMANDED to the Board for recalculation of the refunds due Downs Racing for the Tax Period, consistent with the foregoing opinion.

Jurisdiction is relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Downs Racing, L.P., | : | |
| Petitioner | : | |
| | : | No. 802 F.R. 2016 |
| v. | : | |
| | : | Argued: May 12, 2021 |
| Commonwealth of Pennsylvania, | : | |
| Respondent | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE MARY HANNAH LEAVITT, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE STACY WALLACE, Judge

DISSENTING OPINION
BY JUDGE McCULLOUGH                    FILED: December 19, 2022

Section 1103 of the Pennsylvania Race Horse Development and Gaming Act (Gaming Act) excludes from gross table game revenue and gross terminal revenue *"personal property" distributed to gaming patrons* as a result of their playing a table game or slot machine, respectively. 4 Pa. C.S. § 1103. Because I would conclude that Player's Club Points (PC Points) are not the "personal property" of Downs Racing, L.P. (Downs Racing) when they are distributed to gaming patrons and therefore may not be excluded from Downs Racing's gross revenues under the Gaming Act, I must respectfully dissent.

**I.** **The Commonwealth Has Raised, and We Must Address First, The Dispositive Question of Whether PC Points are "Personal Property" When Distributed**

The Majority summarily bypasses, without analysis, the fundamental question of whether PC Points are Downs Racing's "personal property" when distributed, which is the only time relevant to the tax exclusions at issue in this case. *Downs Racing, L.P. v. Commonwealth* (Pa. Cmwlth. No. 802 F.R. 2016, filed December 19, 2022), slip op. at 6 n.9 (Majority Opinion). The Majority concludes that PC Points can be *valued* only when redeemed, and therefore their status when awarded is irrelevant. But, the Majority's conclusion necessarily begs (and tacitly answers in the negative) the question of whether PC Points are Downs Racing's excludable "personal property" at all under the Gaming Act. That question has been at issue from the beginning, and the Commonwealth Department of Revenue (Commonwealth) properly has raised it for our consideration.[1]

---

[1] "This Court reviews de novo the determinations of the [Board of Finance and Revenue] (Board)," and "[a]lthough cases from the Board are addressed to our appellate jurisdiction, we function as a trial court." *Allegheny County Department of Public Works v. Commonwealth*, 222 A.3d 450, 452 n.3 (Pa. Cmwlth. 2019) (citations omitted). The parties therefore develop in this Court an independent record from which we review de novo the issues presented in the petition for review. *See* Pa. R.A.P. 1571(f), (h)(2); *Southern Pines Trucking v. Commonwealth*, 42 A.3d 1222, 1227 n.5 (Pa. Cmwlth. 2012) (this Court exercises the "broadest scope of review" of Board determinations). The parties may establish the record and identify any disputed questions of fact by filing stipulations. Pa. R.A.P. 1571(f). Although we are bound by the stipulations of fact filed in this Court, *see Northbrook Life Ins. Co. v. Commonwealth*, 949 A.2d 333, 336-37 (Pa. 2008), we are not bound by stipulations, whether of law or fact, submitted to the Board.

Regarding the issues we may review in an appeal from the Board's decision, "[a] question will be heard and considered by the court if it was raised at any stage of the proceedings below and thereafter preserved." Pa. R.A.P. 1571(h)(1). *See also* Pa. R.A.P. 1551(a). As the Respondent, the Commonwealth "may raise any question on review, even if no cross-petition for review has been filed by it, and may introduce any facts in support of its position" so long as it provides the taxpayer petitioner with 20 days' notice of its intention to do so. Pa. R.A.P. 1571(e). *See also Allegheny County Department of Public Works*, 222 A.3d at 452 n.6 ("The Commonwealth could not file an answer to the petition but is allowed to raise any question for our review pursuant to Pennsylvania Rule of Appellate Procedure 1571(e).").

As the Majority acknowledges, the legal question of whether PC Points are "personal property" squarely was before the Board. Downs Racing asserts in its petition for review that the Board erroneously applied the personal property exclusion to Downs Racing's distribution of PC Points based upon patrons' subsequent purchases. *See* Petition, ¶¶ 17-18. We cannot conduct any meaningful, *de novo* review of that issue without first determining the more foundational questions of whether, to what extent, and at what point in time, PC Points are or become Downs Racing's "personal property." Because those questions were before the Board, have not been resolved by stipulation of the parties *in this Court*, and adequately have been identified and preserved by the Commonwealth, we must address them. The Majority's failure to consider this predicate and dispositive issue is, I believe, error.[2]

## II. PC Points are not Excludable "Personal Property" of Downs Racing

### A. Background and Applicable Law

The issue before us concerns Downs Racing's payment of GTR tax and GTGR tax.

#### 1. Section 1103 of the Gaming Act

For gaming tables, "gross table game revenue" or GTGR is defined, in relevant part, as the total of:

---

[2] Although the Commonwealth at oral argument focused on the method and timing of valuation of PC Points, it at no time abandoned the argument that PC Points are not personal property at all. It clearly made the argument in its brief, which is the controlling factor. *See* Pa. R.A.P. 2116(a), 2119(a). Oral argument is not the record. And, most importantly, we may address controlling legal questions on our own. I agree with Judge Wallace's Dissenting Opinion to the extent that it concludes that PC Points are not Downs Racing's personal property when distributed and, therefore, are not excludable from income.

(1) **Cash or cash equivalents received in the playing of a table game minus** the total of:

> (i) Cash or cash equivalents paid to players as a result of playing a table game.
>
> (ii) Cash or cash equivalents paid to purchase annuities to fund prizes payable to players over a period of time as a result of playing a table game.
>
> (iii) **The actual cost paid by the certificate holder[3] for any personal property distributed to a player** as a result of playing a table game. **This does not include travel expenses, food, refreshments, lodging or services.**

4 Pa. C.S. §1103. (emphasis added). For slot machines, "gross terminal revenue" or GTR is defined, in relevant part, as the total of:

> (1) **Cash or cash equivalent wagers received by a slot machine minus** the total of:
>
> (i) Cash or cash equivalents paid out to players as a result of playing a slot machine, whether paid manually or paid out by the slot machine.
>
> (ii) Cash or cash equivalents paid to purchase annuities to fund prizes payable to players over a period of time as a result of playing a slot machine.

---

[3] Section 1103 defines a "certificate holder" as "[a] slot machine licensee that holds a table game operation certificate awarded by the Pennsylvania Gaming Control Board in accordance with Chapter 13A (relating to table games)." 4 Pa. C.S. § 1103. The parties stipulated that Downs Racing is a certificate holder of table game operation.

(iii) **Any personal property distributed to a player** as a result of playing a slot machine. **This does not include travel expenses, food, refreshments, lodging or services**.

*Id.* (emphasis added).

2.  Player's Club Points

During the period of June 1, 2012, through December 31, 2013 (Tax Period), Downs Racing awarded PC Points to players who used slot machines or played at table games. (Stip. ¶ 15.) A player who signs up for the reward program is issued a Status Card, which he inserts into a card reader when playing slot machines or table games. *Id.*, ¶ 16. Once a player has a Status Card, he may begin earning PC Points through playing slot machines and table games. *Id.*, ¶ 19. Every time a player inserts his Status Card into a machine, he is rewarded in real time with PC Points. *Id.*, ¶ 20.

Each PC Point has the value of one dollar of "buying power" under Downs Racing's redemption program but is not redeemable for cash. Players can use the PC Points alone, or combine them with cash, credit cards, or other forms of payment, to make purchases at over 100 shopping, nightlife, entertainment, and dining locations, including locations owned and operated by Downs Racing and related entities, as well as those owned and operated by independent third-party businesses. *Id.*, ¶ 22. Players determine where and how to spend the PC Points. *Id.*, ¶ 23.

Downs Racing has the ability to track the establishments where the PC Points have been used to make purchases but does not have the ability to track the specific items purchased. *Id.*, ¶ 43. Downs Racing reimburses the vendor accepting the PC Points at amounts between 5 to 15% below the retail price. In the case of

redemption for an item at a Downs Racing-operated establishment, Downs Racing purchases the items wholesale and charges the player a retail price.

During the Tax Period, for financial accounting and reporting purposes, Downs Racing recorded a liability for outstanding (or unredeemed) PC Points awarded to players consistent with the "incremental cost approach."[4]  *Id.*, ¶ 29. Downs Racing maintained a liability account to record the liability associated with outstanding (or unredeemed) PC Points earned by and awarded to players. A monthly journal entry was prepared to record the change to point liability from month-to-month along with the related expense.[5]  *Id.*, ¶ 30.

During the Tax Period, Downs Racing awarded a total of 13,594,198.03 PC Points.  *Id.*, ¶ 33.  Downs Racing did not specifically track whether the PC Points were awarded based on slot machine play or table game play.  *Id.*, ¶ 35.  Instead, Downs Racing estimated the amount of PC Points awarded for slot machine play and table game play based on the percentage of its gaming revenue attributable to each type of gaming play.  *Id.*  Downs Racing *estimated* that during the Tax Period, the value attributable to slot machine play was $11,548,459.77.  *Id.*, ¶ 37.  The value of the total PC Points attributable to table game play were estimated to be $2,045,738.26.  *Id.*, ¶ 39.

---

[4] Under the incremental cost approach, a company immediately recognizes revenue at the time of the qualifying purchase.  At the same time, the company records a liability for the cost associated with the company's future obligation to its customers.  (Commonwealth's Br., Appendix C, at 3.)

[5] Effective October 1, 2018, as required by an amendment to the Financial Accounting Standards Board Accounting Standards Codification 606, Revenue from Contracts with Customers, Downs Racing changed its financial accounting reporting for PC Points to the deferred revenue approach.  (Stip. ¶ 32.)

3.      Issues on Appeal

In this Court, Downs Racing argues that PC Points are personal property, with each Point having the value of one dollar. Downs Racing asserts it is entitled to a tax deduction for the PC Points distributed to players in an amount based upon (1) the total PC Points awarded for GTR; and (2) the cost to Downs Racing for the PC Points awarded for GTGR. Alternatively, Downs Racing argues that even if we adopt the Board's redemption-based approach, it is still entitled to $988,912.65 in tax relief because the Board failed to provide relief for numerous PC Points redemptions that were not within the specifically enumerated exclusions (travel, expenses, food, refreshments, lodging or services).

In response to Downs Racing's alternative argument, the *Commonwealth first argues that PC Points do not become "personal property" until they are redeemed, and therefore their value, however calculated, cannot be excluded.* In the alternative, the Commonwealth argues that, if PC Points may be excluded, Downs Racing should be allowed a refund only for redemptions that took place at an establishment where items such as travel expenses, food, refreshments, and lodging could not be purchased.

Although the Majority fails to address it, the Commonwealth's first argument is meritorious and dispositive.

**B.     Discussion**

The issue before this Court is one of statutory interpretation. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded

under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). Only when the words are ambiguous may we look to the general purposes of the statute, legislative history, and other sources in an attempt to determine the legislative intent. 1 Pa. C.S. § 1921(c). "In construing a statute, the courts must attempt to give meaning to every word in a statute as we cannot assume that the legislature intended any words to be mere surplusage." *Holland v. Marcy*, 883 A.2d 449, 455-56 (Pa. 2005). Further, we should avoid construing a statute in such a way as would lead to an absurd result. 1 Pa. C.S. § 1922(1).

Applying these principles of statutory construction, it is clear that the legislature did not intend for PC Points distributed to customers by Downs Racing to be deducted from GTR or GTGR as "personal property" under section 1103 of the Gaming Act. The Gaming Act is clear. GTR and GTGR are calculated by taking the total of wagers received from slot cash and gaming tables and subtracting the cash and personal property distributed or paid out to customers. For gaming tables, "gross table game revenue" or GTR is defined, in relevant part, as the total of:

(1) **Cash or cash equivalents received in the playing of a table game minus** the total of:

(i) Cash or cash equivalents **paid to players** as a result of playing a table game.

(ii) Cash or cash equivalents **paid** to purchase annuities to fund prizes payable to players over a period of time as a result of playing a table game.

(iii) The actual cost **paid by the certificate holder for any personal property distributed to a player** as a result of playing a table game. This does not include travel

PAM- 8

> expenses, food, refreshments, lodging or
> services.

4 Pa. C.S. § 1103 (emphasis added).

For slot machines, "gross terminal revenue" or GTR is defined, in relevant part, as the total of:

> (1) **Cash or cash equivalent wagers received by a slot machine minus** the total of:
>
>> (i) Cash or cash equivalents **paid out to players** as a result of playing a slot machine, whether paid manually or paid out by the slot machine.
>>
>> (ii) Cash or cash equivalents **paid** to purchase annuities to fund prizes payable to players over a period of time as a result of playing a slot machine.
>>
>> (iii) Any **personal property distributed to a player** as a result of playing a slot machine. This does not include travel expenses, food, refreshments, lodging or services.

*Id.* (emphasis added).

This adjusted amount is what the gaming table and slot machine taxes are based upon. The personal property obviously is a reference to **the casino's** personal property distributed to customers (*e.g.*, cars, jewelry, gift cards, and concert and event tickets) – *i.e.*, which are deductible from wagers received to arrive at taxable revenue. The Majority, however, looks at PC Points chiefly from the standpoint of the gaming patron. Although the Majority appears to assume that PC Points are "personal property" when distributed, it then goes on to conclude that redemption by the patron, or lack thereof, determines whether the PC Points are excludable:

PAM- 9

> [T]he patron holding the PC Points decides whether, when, and how to redeem them. That decision necessarily determines the amount, if any, that Downs Racing may subtract from gross revenues. Until redemption occurs, the PC Points *constitute merely an inchoate right*, both the value and cost of which are indeterminate.

(Majority Opinion, at 9.) The contradiction in the Majority's analysis is patent. PC Points cannot be both "personal property" and "an inchoate right" when they are distributed to patrons. The Majority thus necessarily concludes, without saying so, that PC Points are not personal property at all until they are redeemed. Redemption apparently then converts the Points into the "personal property" of the patron, the characterization and value of which determines whether and how much Downs Racing may exclude PC Points from gaming revenue. I believe that this is a misreading of section 1103 that contradicts legislative intent. [6]

Clearly, under the statute, to calculate gross revenue, it is the casino's cash and personal property ("[a]ny personal property distributed to a player") paid out to players that is subtracted from the wagers the casino receives from slot machines and gaming tables to determine the revenue that should be taxed – not the player's personal property. *See* 4 Pa. C.S. §1103. Thus, whether or not PC Points are later redeemed for an item which upon redemption becomes the player's personal property is irrelevant under section 1103, which sets forth how to calculate the gaming revenue, *i.e.*, the casino's profit, for purposes of determining the amount or revenue that is taxable. PC Points are a contractual liability of the casino, *i.e.*, a performance obligation.

As the Majority acknowledges, PC Points when distributed have absolutely no value that would render them "personal property." Rather, they are

---

[6] In construing a statute, the courts must avoid interpreting the language in a way that would lead to an absurd result. *See* 1 Pa. C.S. § 1922(1).

an abstract promise that Downs Racing will, in the future, allow them to be exchanged for something of value. The term "personal property" is defined as "any moveable or intangible thing that is subject to ownership and not classified as real property." Black's Law Dictionary 1337 (9th ed. 2009). PC Points are not owned by Downs Racing. According to Downs Racing's admissions, it maintains a liability account associated with awarded PC Points that it adjusts monthly to record the change in liability from the previous month. Downs Racing's actual cost for the PC Points is recorded as a liability in its financial accounting books. This liability takes into account factors such as breakage (*i.e.*, PC Points awarded <u>but not redeemed</u>). The formula for determining Downs Racing's liability for PC Points is as follows: recorded liability equals the aged liability times the cost factor. (Downs Racing's Br. at 28.) Thus, a PC Point - a promise to transfer a good or service to the player is a performance obligation, *i.e.*, is a liability, not "personal property." *See* "New Revenue Recognition Rules: How will they affect loyalty programs?" authored by PricewaterhouseCoopers LLP (PWC), at 2.

Accordingly, because PC Points are not the "personal property" of either the player or Downs Racing, Downs Racing is not entitled to any refund for Points distributed to players under section 1103. This is not to say that casinos are not entitled to claim loyalty points elsewhere on their corporate income tax returns as a cost of doing business to reduce their income tax liability. I do not reach that question here because it is beyond the scope of this appeal. I merely would hold that PC Points are not deductible as Downs Racing's "personal property" to reduce GTR or GTGR under section 1103. This Court cannot create statutory content out of words that are not there. *Danganan v. Guardian Protection Services*, 179 A.3d 9, 17 (Pa. 2018) ("the Court may not supply additional terms to, or alter, the language

that the Legislature has chosen").[7]  The Majority in its holding does just that. Because, on these grounds, I would reverse the Board's determination, I respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Ceisler joins this Dissenting Opinion.

_____

[7] The distinction between personal property in section 1103 and contractual liabilities of a casino has been and remains clear. The term personal property cannot conceivably be interpreted to include contractual liabilities of the casino.  The very case cited by the Majority, *Capital One Financial Corp. v. Commissioner*, 659 F.3d 316, 327-28 (4th Cir. 2011), fully supports treating PC Points as liabilities, which if and when they are redeemed, are deductible as business expenses on federal income tax returns.

In *Capital One*, the court dealt with whether Capital One Financial Corporation could claim a deduction on its federal corporate income tax return for estimated future costs related to its "MilesOne program."  The court explained that the Internal Revenue Code allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."  26 U.S.C. § 162(a).  The court in *Capital One* recognized that reward points were expenses that are deductible from income as liabilities.  However, the court in *Capital One* never treated the miles as personal property, which is what is required under the Pennsylvania Gaming Act.

Similarly, in *Gold Coast Hotel & Casino v. United States*, 158 F.3d 484, 490 (9th Cir. 1998), the federal court applying the federal tax code, held that slot club member points were a "liability" that the casino could properly deduct at the end of its fiscal year under section 162(a) of the Internal Revenue Code as an ordinary and necessary expense "paid or incurred during the taxable year in carrying on any trade or business."  In *Giant Eagle, Inc. v. Commissioner*, 822 F.3d 666, 669 (3d Cir. 2016), the court described fuelperks! rewards as contractual liabilities that Giant Eagle was entitled to claim as deductions on its federal income tax return during the tax years at issue.  These cases, like *Capital One*, demonstrate that reward points, like the PC Points at issue, are a contractual liability (deductible as an expense for federal and state corporate income tax purposes), and not personal property.

Downs Racing did not prepare and file federal or state income tax returns because it is not subject to federal or Pennsylvania income tax.  *See Uniband, Inc. v. Commissioner*, 140 T.C. 230, 245 (2013); Stip. ¶¶ 7, 28.  Thus, it cannot take advantage of such "deductions" for redeemed PC Points on federal or state corporate income tax returns.  Instead, Downs Racing seeks to engraft such exemption onto section 1103 of the Gaming Act and subtract these liabilities from gaming revenue, contrary to the express language of the General Assembly in enacting the Gaming Act. Quite simply, Downs Racing is not entitled to claim a deduction that the legislature did not provide in section 1103 of the Gaming Act.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Downs Racing, L.P.,                     :
                          Petitioner    :
                                        :
          v.                            :   No. 802 F.R. 2016
                                        :   Argued:  May 12, 2021
Commonwealth of Pennsylvania,           :
                         Respondent     :


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
         HONORABLE MARY HANNAH LEAVITT, Judge
         HONORABLE PATRICIA A. McCULLOUGH, Judge
         HONORABLE MICHAEL H. WOJCIK, Judge
         HONORABLE CHRISTINE FIZZANO CANNON,  Judge
         HONORABLE ELLEN CEISLER, Judge
         HONORABLE STACY WALLACE, Judge


DISSENTING OPINION
BY JUDGE WALLACE                        FILED:  December 19, 2022


        Although I appreciate the Majority's astute analysis in this challenging case, I agree with Judge McCullough that Downs Racing, L.P. (Downs Racing) is not entitled to a tax refund based on the Player's Club Points (PC Points) it distributed to its players.  I write separately to raise two additional points.[1]

---

[1] I respectfully disagree with Judge McCullough's interpretation that the Commonwealth first argues the deduction should not occur at all.  *See Downs Racing, L.P. v. Commonwealth*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 802 F.R. 2016, filed Dec. 19, 2022) (McCullough, J., dissenting), slip op. at 7.  Having been assigned to this case after argument, I reviewed the argument after the fact.  During argument, it became undoubtedly clear that the Commonwealth repeatedly advances only one position:  the Commonwealth looks to the time of redemption of the PC Points to calculate the deduction.  However, even though the Commonwealth takes the position that costs *at the time of redemption* can be excluded from revenue, the broader issue before the Court is the deduction
**(Footnote continued on next page…)**

# Personal Property

In analyzing whether PC Points are "personal property" distributed to players, I respectfully suggest that our focus should be on whether players have a right to PC Points they receive, rather than on who owns the PC Points. *See Downs Racing, L.P. v. Commonwealth*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 802 F.R. 2016, filed Dec. 19, 2022) (McCullough, J., dissenting), slip op. at 9-11. Exhibit D to the current stipulations of fact is a letter from Downs Racing's Chief Financial Officer (CFO) to the Department of Revenue regarding the applicability of sales tax to transactions paid for in PC Points. The letter includes the following discussion, which describes terms and conditions underlying Downs Racing's award of PC Points to its players:

> First, the [PC P]oints a customer accumulates on his Player's Club card are non-transferable, nonnegotiable and cannot be redeemed for cash. Second, a patron's [PC P]oints will expire if his account is inactive for a period of [12] months. Third, and most importantly, a patron who enrolls in the Player's Club card program **has no enforceable rights of any kind**. Specifically, the terms and conditions of the program expressly provide that[] (a) [Downs Racing] may, at any[]time, revise or cancel the program without prior notice and without liability, (b) [Downs Racing] has the unfettered right to deny or revoke membership in the Player's Club card program to any individual or refuse to fulfill any Player's Club card point redemption request for any reason, and (c) all rewards and benefits under the Player's Club card program are offered at the sole discretion of [Downs Racing], which may alter or amend any program feature or benefit at any time including, without limitation, adjusting point accrual or redemption criteria, establishing

---

from gross revenue pertaining to PC Points. The Commonwealth focuses on *when* not *whether* the deduction should occur, but this Court is not bound by the parties' interpretation on a legal issue. In other words, Downs Racing would like to exclude from revenue the value of the points at the time of distribution and the Commonwealth focuses on the time of redemption, but neither party can determine the legal issue of whether the PC Points fall within the § 1103 meaning of personal property. *See* 4 Pa.C.S. § 1103. This Court is duty bound to apply its "independent judgment" on the legal issue even if it is contrary to the position of both parties. *See Commonwealth v. Spruill*, 80 A.3d 453, 460 (Pa. 2013) (explaining "[T]he parties' agreement on a legal issue does not control [the appellate court's] independent judgment.").

conditions of expiration for inactive accounts, or canceling or suspending the Player's Club card program at any time. Simply stated, a patron gives no consideration of any kind for the privilege of enrolling in the program and, consistent therewith, **receives no** promises, guarantees or **rights in return**.

Stipulations of Fact, December 20, 2019 (Stips.) Ex. D (emphasis added).[2]

As this discussion demonstrates, PC Points are non-transferable and have no cash value. A player who receives PC Points also has no right to their use, as they expire, and Downs Racing may cancel them, or simply refuse to honor them, at any time and for any (or no) reason. In his letter, the CFO characterizes PC Points as "worthless because they are cancelled at the time of redemption." *Id.* Our case law provides that, although the word "property" often describes "a physical object that is the subject of ownership," property in a precise legal sense "denotes the aggregate of **rights or legal relations** that an owner has in or with respect to the physical object." *Petition of Borough of Boyertown*, 466 A.2d 239, 245 (Pa. Cmwlth. 1983) (citation omitted and emphasis added); *see also* Black's Law Dictionary 1470 (11th ed. 2019) (defining "property" as, in relevant part, "the **rights** in a valued resource" and "[a]ny external thing over which the **rights** of possession, use, and enjoyment **are exercised**") (emphasis added). As players have no rights to the PC Points they receive, Downs Racing has not truly awarded them property of any kind.

### Legislative Considerations

Unlike the Majority, I do not find persuasive the decision by the United States Court of Appeals for the Fourth Circuit in *Capital One Financial Corp. v.*

---

[2] Further, the current stipulations include a brochure detailing the rules of the Player's Club card program. Stips. Ex. B. The rules include provisions stating, "[Downs Racing] reserves the right to approve, deny or revoke membership in the Player's Club program to any individual or refuse to fulfill any . . . [PC P]oint redemption request for any reason," and, similarly, "[a]ll rewards and benefits under the Player's Club program are offered at the sole discretion of [Downs Racing]." *Id.*

*Commissioner*, 659 F.3d 316 (4th Cir. 2011). *Capital One* dealt with federal income tax law in a completely different industry, which does not share the underlying policy considerations at issue here. The Majority quotes *Capital One*, including its assertion that, "[g]enerally speaking, the income[]tax law is concerned only with realized losses, as well as realized gains." *Downs Racing*, ___ A.3d at ___, slip op. at 10 (quoting *Capital One*, 659 F.3d at 328). The same cannot be said, however, of the Pennsylvania Race Horse Development and Gaming Act (Gaming Act).[3] Section 1102 of the Gaming Act, entitled "Legislative intent" lists numerous policy considerations specific to the gaming industry, including protecting the public through the regulation of gaming. 4 Pa.C.S. § 1102. Another concern the Gaming Act addresses, as our Supreme Court has explained, is a casino's ability to induce players to wager at its facilities. *Greenwood II*, 263 A.3d at 622. This concern is serious enough that our General Assembly has decided not to allow casinos to exclude from gross revenue certain costs used as part of the inducement process. *Id.*[4]

---

[3] 4 Pa.C.S. §§ 1101-1904.

[4] Section 1103 contains the "comp exclusion," which prohibits a taxpayer from subtracting "travel expenses, food, refreshments, lodging or services," referred to as "comps," from gross revenue. *Greenwood Gaming & Ent., Inc. v. Dep't of Revenue*, 90 A.3d 699, 707 (Pa. 2014) (*Greenwood I*) (quoting 4 Pa.C.S. § 1103). Because PC Points are not personal property, Downs Racing may not subtract them from its gross revenue, and we need not consider whether the PC Points fall within the comp exclusion.

Nonetheless, as our Supreme Court has explained, "the General Assembly has made a policy judgment that whenever a casino provides [comps] for the patron's personal use, and assumes the cost of such things for the patron **as an inducement** to wagering at its facilities, it cannot exclude the value of such things from its taxable revenues." *Greenwood Gaming & Ent., Inc. v. Commonwealth*, 263 A.3d 611, 622 (Pa. 2021) (*Greenwood II*) (emphasis added). Importantly, PC Points can be utilized for the very things that our General Assembly has excluded from the deduction. Respectfully, the Commonwealth's position that costs expended on items not falling within the comp exclusion may ultimately be deducted from revenue completely overlooks that the PC Point system is an inducement. This is clear because the system includes the ability to receive the tempting items that the General Assembly has identified as those likely to induce future gambling. Whether the players ultimately use their PC Points on something that was not within the comp exclusion is of no consequence because the players were nonetheless induced, tempted,

**(Footnote continued on next page…)**

For this reason, I do not think the federal court's decision in *Capital One* should guide us.

In sum, setting aside the broad picture of legislative considerations, the PC Points simply are not personal property. Therefore, costs Downs Racing incurred upon the redemption of the PC Points are not deductible from revenue – regardless of whether the player redeems a teddy bear or a steak.

For the reasons expressed above, I dissent.

_____
STACY WALLACE, Judge

---

drawn-in by being able to get the "free" items of their longing. In other words, a teddy bear that is a giveaway distributed to a player as a result of game play is not the same as a teddy bear redeemed with a PC Point because the PC Point was used to get the player to return in the future and presumably gamble more. The wide variety of what can be redeemed with PC Points is sure to tickle the fancy of each player; the future promise of a collectible teddy bear may attract one person while the future promise of a steak may lure in another. To be more accurate, the "promise," is only *perceived* to be a guarantee because, after all, the players do not have rights in the future redemption of the PC Points.

Presently, Downs Racing provides comps to players indirectly using PC Points. Indeed, the letter from Downs Racing's CFO explains that it provides "comps," including "meals and merchandise . . . as a means of promoting the [casino], encouraging the customers to come to the [casino], play longer after they arrive, and return again in the future. The **principal mechanism** [Downs Racing] employs for dispensing **comps** to patrons is the Player's Club card program." Stip. Ex. D (emphasis added).